Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana, and I represent the appellant, Mr. Jason Herrick. The issue in this case involves a specified challenge to certain provisions of Section 922 of Title 18, the Federal Firearms Law. Specifically, Mr. Herrick contends that his possession of his father's handgun, a handgun that had not in any real sense passed through interstate commerce in over 50 years, cannot be prosecuted under the Federal Firearms Law because of the limitations placed on the Federal Government by the Commerce Clause. This is an argument that, of course, the Federal Firearms Law does not apply. But you do concede it had traveled and crossed state lines, right? Yes, it obviously had crossed state lines when Mr. Herrick's father first received it. I think he was in the Pacific in World War II. And there were two or three times, maybe four times, when the Herricks moved. Right. Including as recently as 1966 or 1996. It could have been. I can't remember. It was fairly recent when they moved to Montana. However, my point is, is that I don't think that simply moving with the gun in any way implicates what one would normally consider to be commerce. Certainly not the way that term has been interpreted and described historically by the United States Supreme Court. So what you're saying is that this is, in essence, an antique weapon? What? What is it? It's a 1911 Colt. It's a 1911 Colt, although I don't know that the description of the gun has a certain meaning. That's why I paused on antique. But that's nonetheless your theory, is it was brought as a home, as a war trophy. And it just never went into commerce in the true sense. I think that would be true. Well, what else do you rest on? Because otherwise there is clearly, it's a commercially manufactured weapon. It's not a homemade weapon. It is. And I think the reason why I paused is that I don't necessarily, I paused on the court's use of antique. No, I say I was pausing, too, just to put it into some kind of time frame. But forget antique. It's just, it's a commercially manufactured pistol. It was. It was intended to be sold in interstate commerce. It moved in interstate commerce at some point. And then Mr. Herrick's father got it and brought it back to the United States. He received it, I think, back in, well, his grandfather did. Grandfather received it. Okay, I'm skipping a generation. Inflating a generation. And then it moves across, continues to move across state lines. And should we take any judicial notice that people actually do sell weapons of that nature as historical to gun collectors and the like? Or do we have, does it have to be held out for, actually held out for sale by Mr. Herrick before we could ever associate commerce, reassociate commerce with this commercially manufactured weapon? Do you understand what I'm driving at? I think I do. And I think in a case like this, in order to uphold the conviction, it has to be established that the gun has some sort of link to interstate commerce, more than an attenuated sort of link. Well, it's only attenuated by time. Correct. The statute doesn't have a timeline in it. It only requires that the firearm have been shipped or transported in interstate or foreign commerce. It doesn't require sale. It doesn't require holding out for sale. It doesn't require recent. What are you suggesting we read into that? Well, I think the Court needs to keep in mind that I'm, that the issue I'm raising is not an issue of statutory interpretation. The issue that I'm raising has to do with the ultimate constitutionality of the statute as applied in this particular case. We have repeatedly upheld convictions as constitutional when the firearm has at some point been transported in interstate commerce, even if that was not recent. And you have. But those cases predate both the McCoy decision, the Stewart decision, and the Adams decision. And I believe the Morrison and Jones decisions from the United States Supreme Court. Well, what is the guiding principle, then, that you want us to follow? Well, I think, I think what the Court needs to do is that the Court needs to look at this first under the Lopez decision, applying the Morrison decisions and the more recent decisions from this Court. And I don't think that. And where does that get us? Where that gets us, then, is I think that you have to analyze this case under the four factors set forth in Morrison. And if the Court does that, and if the Court applies the logic, particularly in McCoy and Stewart and even Adams, where they upheld the conviction, I think that what the Court is going to the conclusion that the Court has to come to is that this act involving a handgun that was stolen from Mr. Herrick's father never crossed State lines while it was in his possession. That's not the law, is it? If you steal, go into a gun store and steal something and you get arrested the next day in the same town, are you saying that's the principle, that you have to cross State lines? That isn't the law, is it? That the defendant has to cross State lines? Oh, I mean, certainly, I concede. I'm working here against a large body of law that is against me. My point is, is that that large body of law predates this, particularly this Court's decision in McCoy and Stewart and the Raich decision, which this Court knows is on certiorari. And I think that given those decisions, what I'm asking the panel to do and what I think that the panel should do is reevaluate 922G, reevaluate this argument in light of those newer decisions. Well, if you were writing our opinion, what would you say? If I was writing your opinion, what I would say is that we have upheld these laws, notwithstanding when the firearm may have crossed over State lines. However, those decisions predate our decisions in McCoy and our decisions in Stewart. And even though this gun, this weapon did come into this country and cross State lines, it is, this is not within the reach of the Commerce Clause because? Because its connection to interstate commerce, primarily because of time, is so attenuated that it is not something that Federal jurisdiction should reach under the Commerce Clause. And the amount of time in this case is? Well, the amount of time here, at least, is 50 years, since it was in commerce in any relevant sense. Crossing State lines in and of itself, I don't believe, if the Court applies the newer decisions, can really be considered commerce. Well, why not? I mean, why not? If I'm moving it to, from the East Coast to the West Coast, how do we know whether the person isn't doing that for purposes of getting it ready to sell in a swap meet someplace in California, but happens to get nailed before he can ever do anything to objectively manifest that? And yet, he's positioned himself, it's just as likely that he could be doing something like that, or he might decide to put it into commerce. You're saying, that's why at the beginning I was asking, do we have to look to his conduct now to bring it back within the commerce? It starts out, you're saying, subject to the Commerce Clause, because it clearly was a commercially manufactured weapon, which distinguishes it from all of the other cases that you're citing, McCoy or any of the other, even the machine gun. It's a homemade machine gun. It's assembled out, but not this case. This is a manufactured cold weapon. And so the only, as you say, the only attenuation comes through the passage of time, and yet it's moved as recently as 1996. And you're saying because he, as the owner, the possessor of it, didn't have a commercial intent, then it's too, then it's fallen out somewhere along the range of time as being too attenuated, and therefore outside the Commerce Clause. I think, yeah. That's what you would like. I think that's correct. Okay. McCoy did that in McCoy, essentially. They looked at Bennett's intent. McCoy was a photograph, wasn't it? It was a photograph. It was just a local photograph, and we decided you can't use the fact that the, that which produced the image couldn't rely on the commercial camera. You had to look at what it was, the obscene picture. And that was just homegrown. There's nothing homegrown about this cold. It's a, it's parallel to that. But as I recall, in the McCoy decision, they talked about the fact that it was never intended to be put out into commerce. It was intended to be used solely for commercial purposes. Well, but they can't say that about this gun. It was intended and was. That's the difference. You make the same argument when you say I bought a weapon, but I don't intend to put it in interstate commerce later. Okay. You have used your time. Thank you. Thank you. Thank you. You may proceed. Thank you. Good morning, Your Honors. And I, I want to first start by expressing my appreciation for allowing the court to, or having the court allow me to proceed by video. It certainly saves on the government fisc, and we appreciate it. My name is Carl Rosted. I'm an assistant U.S. attorney in Montana, and I was the primary counsel in the prosecution         I'm not a lawyer. I'm not a lawyer. I'm not a lawyer. I'm not a lawyer. I'm not a lawyer. I think we, the government's brief covers basically the issues that are involved in this case. The gist of the government's response to Mr. Ness and Mr. Herrick's argument is, is that regardless of the, the purpose of the travel, whether it was for personal or commercial, regardless of the timing of the travel, current case law specifically says that a firearm has met that nexus requirement if at any time it traveled in interstate commerce. For this court to adopt Mr. Herrick's argument, it'll have to either overrule or criticize, overrule its own precedent and criticize Supreme Court precedent on this specific issue of 922G1 in, in order to follow that line of cases that Mr. Herrick asked the court to embrace, which is McCoy. I, I don't think Stewart is as applicable because in Stewart it was clear that all of the parts of the gun were within the district of Arizona and therefore, or in the state of Arizona, and therefore the created machine gun never did go in interstate commerce. And I think that that makes that case easily distinguishable. McCoy may be lesser so, but again, as the court pointed out, there are two, there are factors that distinguish it. Namely the, it's not the product, not the photograph that went in interstate commerce at any time. The film and the camera and that sort of thing in this court held that there had to be a greater impact on commerce for the Congress to exercise its jurisdiction over that, or for the federal government to exercise jurisdiction over that case. All of this belies the fact that 922G1 is not a statute subject to new interpretation. It goes back a very long time in some form or another and clearly courts have ruled on this various argument. I mean, other defendants have tried to argue that there has to be a substantial impact on commerce and the courts have ruled that that is not the case. And that is Mr. Ness' problem, although I appreciate his candor in indicating that there is no question that this gun has traveled in interstate commerce. There is no question it was commercially made and therefore I don't believe, Your Honors, that there is anything that this court can do other than affirm Mr. Herrick's judgment or, as I said, overrule its own precedent and start to erode some Supreme Court precedent of Scarborough as being inapplicable. And if the court has no further questions, I think everything else is in my brief. Thank you. I appreciate the opportunity to appear in my video. Thank you. Are there any questions? I have no questions. Thank you. Thank you. Maybe you guys next time can share the same video. Save money for the public defender's office. All right. Thank you. The case just argued is submitted for discussion.
judges: Schroeder, Graber, Fisher